The next case is number 24, 25, 21, Alston v. Franco Good morning, your honors. May it please the court, Ryan Ha for the defendant appellant Joseph Franco. In 2021, David Alston's state conviction was thrown out along with about 500 other convictions simply because the cases had some connection to Franco. It did not matter if the convictions were sound and well supported by evidence and did not involve any police misconduct. They were all thrown out. Alston's conviction was thrown out even though he had pleaded guilty and admitted to committing the crime with which he was charged, that is, possessing and selling crack cocaine. And it was thrown out even though there was no finding of any police misconduct in his case or anything that indicates that he is innocent. Alston brought this 1983 case shortly after his conviction was thrown out. The city agreed to settle the case just a few months after he was joined for $175,000. The case was settled before any motion practice. The settlement also covered John Volpe, the court officer named in the case. He appeared in the case under the defense, had he not? Correct, your honor. Your client had not? Correct, your honor. Exactly. And it's standard. Your client had received a notice from the city that he might be covered and therefore the city might defend him and asked him if he wanted the city to designate them as an agent for service. And he acknowledges that he signed the document and returned it. And so the document bore a heading, Alston v. City of New York. Did it not? Well, that was a form that he received. Did it not? A simple question. The short caption, yes, that was the caption, but it did not have his name in it. And to summarize the complaint was supposed to... This is a police officer, a detective, who got a notice that he may or may not be sued. And if he was, that he was probably going to be represented by the city who asked them to designate them as the agent for service of him. And he did that, correct? He filled out the form, your honor. But the critical fact is that the summary of the complaint was supposed to have been sent to him along with that form, but it was not sent to him. Did you represent him with regard to the other matters in which he was represented? He was sued more than once, was he not? Yes, your honor. And he managed to appear in those other cases with counsel, did he not? Yes, the difference is because he was aware of those actions and not this action. That is precisely the point that we're making here. There were several other cases at the time. At one point, he did not have counsel because he was under indictment. Once his indictment was dismissed in late January, 2023, our firm came on... He has a recollection of the first letter, but then when the city corporation counsel says, we're not going to represent you, he doesn't recall. He doesn't say, I didn't get the letter. He says, I don't recall if I did get the letter. He may not have. He doesn't remember whether he got it or not. The other case, the fact that he, right after... Don't you find that curious? I mean, he was quite clear that there was no summons and complaint in the first letter. He was clear enough to sign the authorization of designating the city as an agent, but he can't seem to recall. Judge Kogan found that a little bit incongruous, didn't he? With respect to your honor, he said he did not receive the letter. He said it's possible. It's possible. It was possible, but he did say he did not receive the letter and he was not aware of this action. I think the fact that in the other actions, once he had counsel, he immediately appeared through counsel in those other actions, but not this one. There was absolutely no reason for him, if he was aware of this action, to not appear in this action while appearing in all the other actions. Once he had counsel who promptly appeared on our firm, appeared on his behalf in all the other actions, he was not aware of this action. We were not aware of this action, and that was the only reason why he did not appear. Now, with regard to the city settlements, it's standard in these cases, it's standard in these cases that the city settlement would cover all the individual officers named in the case. And of course, had Franco been aware of this action and appeared, he would have been included. And if he had been included, Austin would receive the same amount, $175,000, under the city settlement, except it would cover all defendants, including Franco. Well, is that in the record? I don't think that's in the record. You can come in and say whatever you want here, but it has to be in the record for us to take notice of it, doesn't it? I know about the settlement, the $175,000, but all these other assertions you're making about what ifs seem a little speculative. Well, it's in the record. In all the other cases that Franco had appeared, he did participate in the city settlement, and the city settlement would cover all defendants. And I think it's a fair reference that if he appeared in this case, it would have covered him. There was no reason for the settlement not to have covered him. But instead, what happened here was Austin got the money from the city and took advantage of the fact that Franco was not aware of this action and was not included in the settlement. You mean in the sense that he went ahead and moved for a default because he'd never seen an appearance by Mr. Franco in the action in which his lawyer was prosecuting? Right. It sounds like he was taking advantage of it. It sounds like he was exercising his rights. Well, after he received the settlement from the city, he separately- Are you asserting that Austin knew that Franco was unaware of the fact of the action? We have reason to believe that, Your Honor, because- Where in this record do you have that? Don't tell me you have reason to believe. Tell me where in the record that you established. At around the time of this case, there was a parallel case, the Joyner case, which we discussed in our brief, that was filed by Austin's- it's the same counsel Mr. Klein represented, who represents Mr. Austin in this case, also represents the plaintiff in that case. The entry of default in both the Joyner case and this case was entered on the same- the close entry of default was entered on the same day, on February 1st, 2023. And shortly after that, our firm appeared in Joyner on Franco's behalf because we were aware of that action, but not this one. At that point, Austin's counsel had reason to know that we were representing counsel and we had appeared on behalf of Franco and not just- So Mr. Austin's lawyer should have asked you, are you representing Franco in the other- in Austin's case? We believe- yeah, we believe that we were also representing Franco in all these 1983 cases, Your Honor. In a case that says that when a lawyer is- appears in another case, that the lawyer representing the party seeking the default has an obligation to make an inquiry? Well, under those circumstances, there is the theory of technical appearance. Even though there was no formal appearance in this case, there could be deemed to be a technical appearance, which- Technical appearance? Correct you, Your Honor, which- Technical appearance. I don't remember if I got the letter. It all seems to be adding up, doesn't it? I mean, one after another, one excuse after another. Your Honor, respectfully, it's not what- Franco just was not aware of this action. And that's- even though he received the form and sent the form back in, he was not aware of this action. And the letter from- What's the standard of review with regard to Judge Kogan's findings? Abuse of discretion. Abuse of discretion, clear error. And I would note also, in this context, this court has clearly stated that a district court's discretion on a motion to vacate the default, because of the strong preference for resolving cases on the merits, the district court's discretion is circumscribed. It's limited here. And that should be taken into account. Thank you, counsel. Mr. Klein. May it please the court, Brett Klein for Plaintiff Appellee David Alston. Franco's appeal asks this court to second-guess a district court that sat through the litigation, read the inquest transcripts, and carefully weighed the evidence before it. The abuse of discretion standard applies here, and for good reason. Judge Kogan was uniquely positioned to assess the credibility of Franco's explanations and strength of his purported defense. He found both wanting. To be clear, as the court noted, Judge Wesley, the denial of a motion to vacate is reviewed on an abuse of discretion standard only. Factual findings underlying that denial, including willfulness, are reviewed for clear error only. And Judge Kogan made credibility determinations. Well, we have to balance that against default judgment being disfavored and circumcised. Absolutely. It was circumscribed discretion in that context, right? And I believe the record is clear that Judge Kogan took great care to do that. He assessed Franco's explanation as, quote, far-fetched. He found the non-receipt claim discussed by Judge Wesley as not credible given the totality of the circumstances. Can I ask why your friend on the other side said that there would be no reason for Franco to have appeared in the other 13, 12, 13 cases and not this one? Can you think of a reason why he would have not appeared, chosen this one not to appear in, but in the others? Well, beyond speculating what was in his mind, he was on notice. Did Judge Kogan address it? I mean, it would help me to understand why one would do that. Easier explanation would seem to be that someone who's a defendant in 13 cases may have not been fully paying attention to everything, and this could have been negligence. Thank you, Judge Park. Sorry to interrupt. At this time, when this happened, he admits he was facing criminal charges. He got lucky that there was prosecutorial misconduct, apparently, but it didn't prevent from being fired for the misconduct. He was apparently on video, not doing what he, you know, lying about the events of certain arrests. And in the months leading up to when he was served here, he was apparently dealing with his criminal case per his own admission. That's when he signed the notarized designation of and as Judge Kogan showed, it was part of a pattern of willfully defaulting and then having his counsel come in. Whether we knew, and he admitted that initially the Karasich-Michel affirmed did not represent him while the charges were pending, which was the time when he was served here. In some cases, he must have brought it to their attention or they acted on it. I don't know how that happened. So just so I understand, in some of the other cases, he also did not appear at first and then subsequently did. Including Joyner and a few others that are cited in the record. Okay. He, uh, there were no, there were certain clerk's notations of default. So I guess, is that enough to say, I mean, but he eventually did. So why would we draw the reference inference in this case that he is intended not to? I think Judge Kogan was clear that, that his, his, he, he, whether he ignored it, um, or whether he, uh, forgot about it, um, you know, it, it, it, he willfully defaulted. For those I know, I mean, I think forgot about it is certainly not enough for willfulness. Yeah. Ignored it, I don't know. I mean, I think it, willfulness requires something more than that too. It does. Under bricklayers, uh, it means conduct, uh, quote egregious and not satisfactorily explained. Um, and signing a notarized lawsuit specific designation form and the going completely silent. I guess just for willfulness, you have to extend to gain something from it. I think, I mean, I know that's not part of the standard, but like, and I don't understand why one would do that in this case. Like what advantage could you possibly have, I think he would have gotten ignoring a lawsuit. Evading accountability. Um, he has been over a dozen times. Um, and he, uh, clearly didn't, uh, counsel may have denied his request for legal assistance here. Likely they did because his charges are pending. And then he, uh, didn't follow up on it. Didn't check the docket. Didn't, uh, check with, uh, his attorneys. His attorneys didn't check the docket. His attorneys who were litigating a dozen plus cases in both courts, um, didn't check. And, uh, to suggest that it's either the plaintiff's burden, which it was not, or they even suggested it might have been the city's burden, which it was not, uh, was all, uh, addressed by Judge Kogan in his decision. Um, he essentially wants this court to re-argue, he's re-arguing the facts in his briefs as if this were a fresh proceeding. Um, every argument that the NYPD didn't send the complaint, that, uh, he cites a case in his fine misconduct. These are merits arguments, Your Honor, dressed as default vacatur arguments. He is not identifying the legal error. He is asking this court to substitute its judgment for the district court's judgment on every discretionary call. And that is not what the standard of review permits. Um, so with regard to willfulness, uh, you know, it was definitely negligence. Plus he, um, he signed the, he signed the designation. Uh, he knew he was being sued, complete silence, silence for a year, was willful. The district court identified why his explanation was not credible. The managing attorney of the NYPD could not say the summons was not sent, only that he lacked absolute certainty. That is ambiguity, not corroboration. This was a finding of fact made by Judge Kogan. Frank Levin did nothing, never checked the docket, never called the law department, never asked his union counsel. Again, not someone who was dealing with a lawsuit and had no experience. He had 13 lawsuits going on aside from this. I guess I, I'm still struggling with it. That seems to cut entirely the opposite way. If you're being sued in 13 cases, it's understandable to me that in one of them you dropped the ball. Um, and, but you're fighting the other ones. And that suggests that you are not hoping that they're going to go away. You understand you're in deep water in a lot of different ways. And it just doesn't make sense to me why one would, why the inference is he, he's, he's in this case, he's intending to, uh, to try to, you said evade, you know, responsibility. Well, that should, that falls on him, not on the plaintiff. Um, the fact is he did get these documents. He CC'd, his lawyers were CC'd on the letter from the law department saying, uh, you're not being represented here. You should recall the Karasek-Michella law firm and a letter from after service was made, uh, at the police headquarters. Um, there was correspondence sent from the law, so the process was served at the law, at the police headquarters and then police headquarters or the law department sends correspondence to Mr. Franco, all of which he says he doesn't recall whether he not, he got it. Um, what his motivation was, uh, is not the plaintiff's. Well, there's a lawyer's affidavit as well, right? I mean, so whatever Judge Kogan thought of Mr. Franco's credibility, there was also a lawyer there. Saying they haven't, they couldn't locate it. Um, but the, the managing attorney of the, uh, legal bureau, I believe confirmed that it was mailed to them. Um, and in any event, um, they're representing him on other cases and did have a relationship with him where they could have easily checked and did it. Yeah. Um, but I mean, I don't think the mailbox rule would get you to willfulness either. I mean, we just, the case before us that we understand why the, why Iran is not showing up for, uh, for, to, to, you know, uh, dispute the, the claims on the merits. Here, I don't understand that and I guess that's my problem. I think this is someone who was, um, you know, uh, had integrity issues, uh, so to speak. Someone who was dealing with, uh, serious allegations that resulted in being fired and who was dealing, uh, was served with a flurry of lawsuits for us to read into, uh, or for plaintiff to be penalized, uh, for, uh, reading into what his motivation was. I don't think that's what the standard requires. Um, so I think on willfulness, um, when the finding rested on the full picture, not negligence alone. Um, and I think that that is egregious and not satisfactorily explained. Um, and that's what happens here. Uh, it was not satisfactorily explained as Your Honor's pointing out. That's all that's required. I don't know that the plaintiff has to have the explanation, uh, that was in, uh, Franco's head. Uh, on the merits, let me briefly ask you about that. I, I know, you know, you, you argue we shouldn't consider that, uh, here now. If we were, if we did consider that, does that not rise to, does that not raise a significant issue, at least on the merits? I'm not deciding it one way or another, but there is, appears to be some kind of a defense. Yeah, I don't, I don't think that there is. I think that the affidavit, uh, submitted in, uh, to, to, on the motion of AK was devoid of any, uh, facts or denials. Um, and the plaintiff's, uh, testimony alone is enough. Uh, his, he testified at length before magistrate and district judge Reyes. His credibility was, uh, he was credited as, uh, and, and judge Reyes found that he was truthful, um, under this court's, uh, line of cases, Bellamy versus city of New York from 2019, Key KEE versus city of New York from 2021. Um, summary judgment's been reversed on malicious prosecution and fair trial claims where plaintiff denied drug related activity, holding the court, the court must assume the jury will credit the Here, um, it's not a merits determination. Um, it's, you know, uh, I think he had to, uh, produce, um, evidence of, uh, of, of, of, of, of a defense and he didn't do, excuse me, he didn't do that, uh, in any way whatsoever. Um, his affidavit was devoid. He, uh, talked about, um, a bunch of other things, but, but not, uh, he submitted a small, it said nothing about the drug transaction, not one word denying fabrication. And this court has been clear. A defendant must do more than file conclusory denials. That's bricklayers. He filed no denial at all on the central issue as judge Pogon pointed out, whether he fabricated the buy and bust, that omission is fatal and his meritorious defense, um, to his meritorious defense showing. Um, and I think we, Mr. Alston also makes self prejudice, uh, as pointed out by judge Pogon. Um, he sat for a deposition. He testified at inquest. It was vivid. It was painful. This is a gentleman who was working at the time, had not been, uh, in any type of trouble in his life. And, uh, after watching some sporting events, went to a chicken place and all of a sudden ends up on Rikers Island, facing a bee felony in New York, which could have resulted in years in prison. Um, under pressure, he took that plea, uh, and ended up going to drug treatment, uh, ended up going to prison. And, um, his trauma was palpable. He was tearful in court. He missed his father's death while in custody and, um, other, uh, key aspects of his life were derailed because of this. Um, the argument that Alston's trauma, uh, can't constitute prejudice as argued by the defense, by the, uh, appellant, sorry, uh, because the conduct might not have happened, turns the default judgment doctrine on its head. How many of the other cases did he default and then ultimately was allowed to reappear? Four or five, I believe. Of the 13? I believe so. Okay. Yeah. Um, and, and in those cases, and it was not clear, uh, whether this firm, the Karasich-Michello firm was representing him or not. And it wasn't certainly, it could not be plaintiff's burden to know what was going on in his confidential, uh, request for legal assistance. And in this case, in fact, they did initially deny him representation and then reconsider, apparently in some cases, uh, for anyone to assume that they were representing him in every case, uh, is just not, uh, is belied by the record. Does the record tell us what the nature of his counsel to, to, uh, uh, enter, appear and enter a defense? Yeah, he just, well, he, there was, uh, really kind of vague, just, uh, we've, uh, as counsel, we've just become aware of it in some insubstance. I believe there was some, I believe the letters on the record, um, or docket sheets. Um, there was no, uh, affidavits. And in those cases, um, the, uh, parties seem to have agreed to extending the time for them to appear. Um, so it, it, it does seem that he let those deadlines go to respond. And then, uh, when this law firm became involved or became aware of it appeared, um, yeah. Um, okay. Thank you counsel. Thank you. We'll hear Ravon. Judge, first, um, in his reply affidavit, Franco did address the reason for his default in these other cases was because at that point he did not have counsel because of his pending indictment. But the circumstances in this case are completely different. His default here was because he was not aware of the action. Um, there, there's no pattern here of, of any willful default. This case is different from all the other cases. Again, as, as Judge Park, you recognize that there's really no reason for him not to appear in this action. As soon as he had counsel, he appeared in all the actions. Um, it's also important to note here that the district court did not make any finding of willful misconduct of any willful conduct in this case. Um, there was no finding of any willful or bad faith or, um, deliberate conduct in this case. Uh, but despite that, the district court weighed this factor against Franco based on the finding that he, quote, acted with a degree of negligence. And I submit your honor that that is clearly improper under second circuit law. This court has consistently held that the willfulness standard does not include negligence and negligence does not weigh against vacating a default. Um, with regard to meritorious defense, I was just very briefly, you know, we, we laid them out very fully in our, in our brief. I would just note that initially we relied on Olson's guilty plea, um, as supporting one of our main meritorious defenses on the facts. The fact that he admitted under oath to engaging in the narcotic sales that he was charged with, that alone is enough to support a meritorious defense. In fact, the guilty plea, those admissions are enough to defeat his claims as a matter of law on summary judgment. That's what happened in the Fourette case, another case, um, that, that, that Franco was sued. And the court there granted summary judgment and dismissed the denial of a fair trial claim because Fourette had pleaded guilty and admitted under oath that he possessed and sold crack cocaine with, um, it's very similar to this case. And the court there held, quote, without more, without some evidence of fabrication beyond his own statements, which are belied by his own prior statements under oath, plaintiff's claim cannot survive summary judgment. The district court here in this case found that the guilty plea is quote, too thin a reed, close quote, to support a meritorious defense. And I would respect to submit that that is clearly erroneous and an abuse of discretion. A guilty plea and admission under oath before a judge in open court is not too thin a reed, your honor, um, to, uh, to support a meritorious defense. Notwithstanding the 500 convictions that were vacated. Okay, go ahead. And with regard to the prejudice problem, um, we discussed it. It's not a brief, this court below just assumed that Frank was wrongfully, uh, uh, that, that Alston was in fact wrongfully convicted, but that is the ultimate issue to be decided at the trial. Um, just because of the default, this inadvertent default and the allegations are deemed admitted doesn't mean that the facts are in fact true, that there was in fact a wrongful conviction here. That is the issue that, that, that, that has to be decided by a jury, uh, based on their determination. I think throughout the opinion, the decision below, um, the district court just simply did not construe the criteria for making a default generously in favor of Franco and did not resolve any doubts in his favor as required under second circuit law. There is nothing in the order or the opinion that indicates that the district court took into account the strong public policy for resolving disputes on the merits. Um, and we respectfully submit that under second circuit law properly applied, um, um, the default here should have been vacated. Thank you, counsel. Thank you both. We'll take the case under advice. Thank you.